**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Adrian Norman PAYSENO,**
**Defendant-Appellant.**

**No. 85–3019.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1985.

Decided Feb. 11, 1986.

Andrew Hamilton, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Alix Foster, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Before WRIGHT and REINHARDT, Circuit Judges, and STRAND, District Judge.*

STRAND, District Judge:

This is an appeal from the defendant, Adrian N. Payseno's conviction and sentence under Title II of the Consumer Credit Protection Act, 18 U.S.C. § 894,[1] which establishes as a federal crime the collection of extensions of credit by extortionate means. Payseno raises five issues on appeal. We conclude that the district court committed plain error in failing to give a specific unanimity instruction and reverse the conviction; therefore, we do not address the remaining four issues.

### FACTS

This case involves allegations of extortionate conduct in three separate cities: Seattle, Washington; and, Burbank and San Diego, California. The undisputed evidence shows that Patrick Cocco was a San Francisco bookmaker. In the Fall of 1977, he received a $10,000.00 loan for his bookmaking business from a person later identified as Joseph Wiley Brown. Cocco's bookmaking business subsequently began to fail. As a result, he attempted to offset his financial losses by loaning the money he had borrowed from Brown to some of his customers at exorbitant interest rates. Cocco obtained additional loans from Brown and utilized these funds in his expanding loansharking operations.

* Honorable Roger G. Strand, United States District Judge, District of Arizona, sitting by designation.

1. 18 U.S.C. section 894 provides as follows:
§ 894. **Collection of extensions of credit by extortionate means**
(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

(1) to collect or attempt to collect any extension of credit, or
(2) to punish any person for the nonrepayment thereof,
shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

By Spring 1978, Cocco's total indebtedness to Brown was approximately $150,000.00. Since he was unable to repay the loans, Cocco began traveling from city to city to avoid Brown. Payseno, a known associate of Brown's, was allegedly contacted by Cocco in 1978 while Cocco was in hiding. The nature of these conversations is in dispute.

Beginning in April 1979, Cocco's family received threatening telephone calls and visits by persons attempting to locate him. Cocco's daughter and his step-son were contacted during that month. Both were advised that their father owed a large sum of money and that trouble would result if he did not contact the caller or visitor. In December 1979, Cocco's son was contacted both at his office and his home in San Diego, California. At that time, Cocco's son and family were threatened with death unless Patrick Cocco contacted the caller.

Payseno was originally charged with two counts of extortion under the Act, however, Count I was dismissed by the district court and the trial proceeded solely on Count II of the indictment.[2] The defense sought to prove that Payseno had no involvement with either the loans or the extortionate threats to Cocco's family. Following a four-day trial, the jury returned a guilty verdict on Count II of the indictment.

Numerous post-trial motions were presented to the court,[3] however, the court granted a new trial on two grounds not raised by Payseno. After reviewing the evidence, the court concluded that it had committed reversible error in failing to give a specific unanimity instruction and because its order to strike the inflammatory testimony of Daniel Cocco, a key government witness, may have been ineffective. Upon reconsideration, the court vacated the new trial based on a perceived lack of authority to order a new trial *sua sponte*. The defendant Payseno was sentenced to three years imprisonment and was released on bond pending this appeal.

## SPECIFIC UNANIMITY INSTRUCTION

■ Payseno contends that the court erred in failing to give a specific unanimity instruction. Because he did not request a specific unanimity instruction and failed to object to the court's instructions as given, the issue is not deemed to be waived but must be reviewed under the plain error standard. *United States v. Wright*, 742 F.2d 1215, 1222 (9th Cir.1984); *United States v. Essex*, 734 F.2d 832, 843–44 (D.C. Cir.1984); *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir.1983). An improper instruction rarely justifies a plain error finding. *United States v. Glickman*, 604 F.2d 625, 632 (9th Cir.1979), *cert. denied*, 444 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed.2d 764 (1980); *see Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). Moreover, plain error is highly prejudicial error affecting substantial rights. *United States v. Kennedy*, 726 F.2d 546, 548 (9th Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984).

2. Count II of the indictment provided:

   During a period of time extending from on or about April, 1979, to on or about December, 1979, at Seattle within the Western District of Washington and elsewhere, ADRIAN PAYSENO, Joseph Wiley Brown and others unknown to the Grand Jury, knowingly participated in the use of extortionate means to collect extensions of credit previously made to Patrick Cocco, and to punish Patrick Cocco and others for the nonrepayment thereof.

3. The defense moved for acquittal alleging insufficiency of the evidence and sought a new trial for the following alleged errors: 1) failing to grant the third request for a continuance, 2) limiting cross-examination of Patrick Cocco, and 3) failure to instruct the jury that they had to find that defendant participated in the venture while extortionate means were being used in Washington.

Payseno filed affidavits to express his serious concern about inadequacy of his representation at trial. The court granted the motion of his trial counsel, Allen Ressler and John Wolfe, to withdraw. Payseno filed a *pro se* motion for a new trial alleging ineffective assistance of counsel and suppression of perjured testimony. A Federal Public Defender appointed for Payseno filed another new trial motion detailing alleged instances of ineffective assistance of counsel. The court ruled that counsel had provided adequate representation.

Count II of the indictment charged Payseno with knowingly participating with Brown in the use of extortionate means from April to December, 1979. Defendant demanded a bill of particulars. In January 1984, the court ordered the government to describe the extortionate means employed, including the dates, places and parties involved. The government provided the defendant with the following information:

In April 1979, in Seattle, Washington, Mrs. Barbara Merlino was repeatedly telephoned and the caller threatened her and her children if Patrick Cocco did not repay his debt to Joseph Brown. In April or May of 1979, in Burbank, California, Mr. and Mrs. William Seelig were contacted repeatedly in person and by telephone and threatened that their house would be burned down and they would be murdered if Patrick Cocco did not contact Adrian Payseno. In December 1979, in San Diego, California, Dan Cocco was contacted in person and by telephone. He was informed that he, his wife, and children would be killed if his father did not contact "Adrian." The identities of the persons who made all of these threats are unknown.

One of the alleged instances of ineffective assistance of counsel raised in the post-trial motions concerned the failure to require the government to elect between the three separate and distinct allegations of extortion. Cf. *United States v. Aquilar*, 756 F.2d 1418, 1422–23 (9th Cir.1985) (election provides an alternative to dismissal of a duplicitous indictment). Indeed, in granting a new trial, the court noted: "Because the extortionate means, if they in fact occurred, were separate crimes rather than elements of a single crime, each should have been charged in a separate count of the indictment." While Count II of the indictment was arguably not duplic-

itous,[4] the bill of particulars should have prompted an election motion.

■ Normally, a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications form the basis of the guilty verdict. *See United States v. Frazin & Miller*, 780 F.2d 1461, 1468 (9th Cir.1986); *United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir.1983); *United States v. Murray*, 618 F.2d 892, 898 (2d Cir.1980). The trial court here gave the following general instruction:

Your verdict must be unanimous. That is, either all 12 of you for not guilty or all 12 for guilty.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the bailiff. That note should be signed by the presiding juror.

Until you have reached a unanimous verdict, you must not disclose to any person, not even to the Court, how the jury stands, numerically or otherwise, on the question of guilt or innocence.

When you have reached a unanimous agreement as to your verdict, the presiding juror should complete the form to state your verdict and then inform the bailiff that you have reached a verdict.

Payseno cites several cases which found violations of the Sixth Amendment right to a unanimous verdict.[5] In *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977), the jury was instructed that it could find the defendant guilty of receiving, concealing, storing, bartering, selling, or disposing of a stolen vehicle without agreeing on which of the six acts he had committed. The Fifth Circuit reversed, reasoning that where a statute can be violated by distinct acts, the defendant's right to a unanimous verdict would not be preserved by mere agreement on guilt unless jury consensus on the de-

---

**4.** Duplicity in criminal pleading is the joinder of two or more separate offenses in the same count. "One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on a commission of a particular offense." *United States v.*

*UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

**5.** Rule 31(a), Fed.R.Crim.P., sets forth the right to a unanimous jury verdict.

fendant's course of action is also required. *Id.* at 458. The possibility that the jury may have returned its verdict "in the face of a substantial rift among the jurors over the facts" infringed Gipson's substantial rights. *Id.* at 459. The same concern prompted the trial court to initially grant a new trial in this case.

Payseno also relies on two Ninth Circuit cases: *United States v. Mastelotto,* 717 F.2d 1238 (9th Cir.1983), and *United States v. Echeverry,* 698 F.2d 375 (9th Cir.1983), *modified,* 719 F.2d 974 (9th Cir.1983). In *Mastelotto,* we reversed a mail and wire fraud conviction for the court's failure to instruct that all jurors had to agree on the existence of, and defendant's participation in, the same scheme to defraud. *Mastelotto, supra,* at 1247.

In *Echeverry,* we reversed a drug conviction because an ambiguous instruction permitted the jury to convict without unanimous agreement on the existence and duration of a single conspiracy or multiple conspiracies. *Echeverry, supra,* at 377. We explained in that decision that: "We are not free to hypothesize whether the jury indeed agreed to and was clear on the duration of a single conspiracy or of multiple conspiracies." *Id.*

On rehearing, the court acknowledged that, in routine cases involving multiple counts or schemes, it may be possible to protect the defendant's rights though a general unanimity instruction similar to the type given here. 719 F.2d at 974. The court went on to hold that a different rule applies where juror confusion may exist.

> When it appears however, that there is *a genuine possibility of jury confusion* or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice. To correct any potential confusion in such a case, *the trial judge must augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts. Id.* at 975 (emphasis added).

Recently, we reaffirmed these standards in *United States v. Frazin & Miller, su-*

*pra,* at 1468. We noted that a specific unanimity instruction is appropriate "where the complex nature of the evidence, a discrepancy between the evidence and the indictment, or some other particular factor creates a genuine possibility of juror confusion." The government relies on *Ferris, supra,* and *Wright, supra,* for the proposition that the general unanimity instruction was sufficient in light of the simplicity of the evidence. Further, the government argues that there was insufficient evidence to convict Payseno based upon the Merlino or Dan Cocco incidents, and as a result the jury had to agree on the Seelig incident as the basis for its verdict. We disagree. The record indicates that Patrick Cocco's testimony connected Payseno with both the Merlino and Dan Cocco incidents. There is no assurance that the jury did in fact agree on the Seelig incident to arrive at its verdict.

As Payseno persuasively argues, this case was also complicated by defense counsel's failure to require an election after the bill of particulars revealed three separate instances of extortion. Where the nature of the evidence demands, a court may be required to frame an instruction that substantial agreement is necessary on a specific set of facts. *Frazin & Miller, supra,* at 1468; *Ferris, supra,* at 1407.

Here, the government introduced evidence of three offenses supporting one count of the indictment. The jury was instructed on the following elements of the 18 U.S.C. § 894 violation charged in Count II of the indictment:

> In order to establish that the defendant committed the offense charged in Count II of the Indictment, the Government must prove beyond a reasonable doubt each of the following elements:
> 1. That between on or about April, 1979, and on or about December, 1979, within the Western District of Washington and elsewhere, extortionate means were used in an attempt to collect extensions of credit previously made to Patrick Cocco;
> 2. That Adrian Payseno either himself used one or more of those extortionate

means or aided and abetted another in the use of one or more of those extortionate means;

3. That Adrian Payseno acted knowingly.

In the present case, there exists the genuine possibility that some jurors may have believed Payseno used extortionate means on one occasion while others may have believed that he was guilty of engaging in extortion at a different time and place. *Echeverry* clearly sets forth the rule that we are not free to speculate about what the jurors agreed to in their six hours of deliberation over Payseno's guilt or innocence.

The three acts of extortion in this case were directed at separate victims, occurred at different times and different locations, involved different methods of communicating the threats, and were carried out by varying numbers of individuals. The evidence connecting Payseno to the alleged threats was thus complicated and creates an uncertainty and confusion regarding the basis for the conviction. A general unanimity instruction will not suffice when the possibility of such jury confusion exists. Accordingly, a conviction under these circumstances can not be upheld.

We therefore reverse the defendant's conviction and remand for a new trial.