**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary JEROME, Defendant–Appellant.**

**No. 87–1386.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1990.

Decided Jan. 24, 1991.

George J. Cotsirilos, San Francisco, Cal., for defendant-appellant.

L. Anthony White, Asst. U.S. Atty., Reno, Nev., for plaintiff-appellee.

Before CHAMBERS, KOZINSKI and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Gary Jerome appeals his conviction of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, his conviction of conspiracy in violation of 21 U.S.C. § 846 and various related drug felonies. We affirm all his convictions with the exception of his conviction for engaging in a continuing criminal enterprise. The pivotal issue in reversing this conviction is whether Jerome was shown to have acted in concert with five persons whom he organized.

## BACKGROUND

Gary Jerome was a dealer in narcotics in the San Francisco and Lake Tahoe area for at least 10 years prior to his arrest in 1986. He bought from wholesalers and then dispensed drugs to a variety of purchasers who included, among others, the employees of Lucky Stores holding an annual party, a substantial number of the members of the medical staff of Lake Tahoe Hospital and, eventually, undercover agents of the Drug Enforcement Administration (DEA).

Beginning in 1984 John Wooster was a major supplier of Jerome. Wooster in turn received his drugs from Frank Sanders, Oscar Larrozolo and Ed Devaney. Beginning in 1985 Jerome was also supplied with drugs by Joe Kinney and his wife Monica. They in turn obtained drugs from Florida or the Bahamas through Frank Kendricks and Tony Pellon. On at least one occasion Monica Kinney personally transported cocaine from Florida to Nevada for delivery to Jerome.

Among others who assisted Jerome were persons identified only as Jay and Duke who were used by Jerome to collect a thousand dollar debt. Jerome's girlfriend Sharon Unden also handled telephone calls for him involving the purchase of several thousand pounds of marijuana and on occasion accepted money that Jerome's customers left for him at his house.

Among others who dealt with Jerome was Denay Weed, a distributor herself. In August 1985 Jerome obtained a plane and a pilot, Larry Hall, to transport Wooster to Elko, Nevada with a half kilogram of cocaine to meet Weed. There Jerome instructed Wooster to remain while arranging for he and Weed to fly with the cocaine to Boise, Idaho. Hall then flew Jerome and Weed with the proceeds of the sale back to Elko and Wooster. From at least the time of delivery of the cocaine in Boise, Hall was aware that Jerome was involved in a drug transaction which he was assisting by flying Jerome with the proceeds out of Boise.

In the eventual undercover operation against Jerome in August 1986 Jerome offered to sell DEA agents five kilograms of cocaine. On August 3 Jerome and Wooster delivered the five kilograms to the agents at the Hyatt Hotel in Incline Village, California. Jerome was arrested at this time.

## PROCEEDINGS

Jerome was indicted on August 13, 1986 and in a superseding indictment was charged with operating a continuing criminal enterprise (CCE), with conspiracy to distribute cocaine, with distribution of cocaine, with traveling or causing others to travel in interstate commerce for the purpose of conducting criminal drug activities,

with the use of a telephone to facilitate a drug conspiracy, and with conspiracy to distribute marijuana. The marijuana counts were eventually severed. He went on trial on the remaining charges on May 26, 1987. Jerome's defense consisted in testimony that he was depressed, disorganized and alcoholic to the point of being insane; that he had been entrapped; and that his small-scale enterprise did not constitute a continuing criminal enterprise. On July 2, 1987 he was convicted on all counts.

Jerome's motion for a new trial was denied. He was sentenced to 20 years imprisonment for the continuing criminal enterprise, 15 years consecutive to this sentence for conspiracy to distribute, and to three five-year sentences, each consecutive to the others, for the other drug felonies.

Post-trial Jerome submitted an affidavit to the effect that one Rickey Housley had been told by an unnamed member of the jury that the juror considered defense counsel incompetent in that he was losing the case for Jerome. On the basis of this affidavit Jerome requested an evidentiary hearing, which was denied.

Jerome appeals.

## ANALYSIS

*The Five Person Requirement for Conviction of a Continuing Criminal Enterprise*

To be guilty of engaging in a continuing criminal enterprise a person must be shown to have acted "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and from which such person obtains substantial income or resources." 21 U.S.C. § 848(c) (Supp.1990). It is established law that the statute is satisfied although, with respect to the five persons organized, the person charged with the continuing criminal enterprise did not have the same kind of relationship with each of them, and the relationship did not exist at the same time, and the five persons did not act in concert with each other so

long as they acted in concert with the organizer. *United States v. Ray*, 731 F.2d 1361, 1367 (9th Cir.1984).

It is also the law of the First, Third, Seventh and Eleventh Circuits that there is no need for the jury to agree as to the identity of each of the five persons with whom the organizer is acting in concert. The theory of these courts is that Congress was interested in punishing persons who had organized an enterprise of a certain size and that if the jury agreed on the size of the organization it was not necessary that every juror agree as to who the persons were that made up the organization. *See, e.g., United States v. Jackson*, 879 F.2d 85, 87 (3d Cir.1989).

In the present case the prosecution argued to the jury that Jerome was the organizer of John Wooster; of Joe and Monica Kinney; of Sharon Unden; of Jay and Duke; of Kendricks, Sanders, Larrozolo, Pellon, and Devaney; and of Hall. On appeal the government concedes that under no interpretation of the term "organizer" could Jerome be said to be the organizer of the suppliers of his suppliers. With this concession it is evident that Devaney, Larrozolo, Kendricks, Pellon and Sanders could not count among the five persons whom Jerome was found to have organized.

As to the other possible persons who acted in concert with Jerome, the evidence is open to interpretation. Arguably a rational juror could have inferred that Jay and Duke were enforcers, although as they charged $500 to collect a thousand dollar debt in the only instance of their enforcement it appears doubtful that Jerome obtained "substantial income from them," as the statute requires.

Hall, it is fair to say, was organized by Jerome at least to fly him with the proceeds of a drug sale. Unden, there was some evidence to show, was his witting collaborator in the big marijuana deal that fell through. Weed was shown to be not merely a customer but a distributor whose trip to Idaho and back to Nevada Jerome organized.

■ The most debatable question is whether Wooster and the Kinneys, his reg-

ular suppliers, were subject to Jerome as "an organizer." We read the statutory language "or any other position of management" to indicate that an "organizer" must exercise some sort of managerial responsibility; one does not qualify if one simply sets up a system of supply. *United States v. Apodaca*, 843 F.2d 421, 426 (10th Cir. 1988), *cert. denied*, 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1989). Every legitimate retail store makes arrangements with its regular suppliers. In one sense it may be said to organize its supply, but does it organize its suppliers? Surely not in the sense of being the manager of its suppliers. To be an organizer within the sense of the statute more is required than simply being a steady customer. Under proper instructions a jury could have found that Jerome was the organizer of Wooster on the trip to Elko and it is possible that a jury could have found that Jerome organized the trip of Monica Kinney from Florida to Lake Tahoe. Consequently "the five person" requirement might have been met by the two suppliers (John Wooster and Monica Kinney), plus the pilot, Larry Hall, plus the distributor, Denay Weed, plus the helper, Sharon Unden.

■ We do not, however, reach the question of whether the jury in this case could have reached this conclusion. Rather, we note that the jury was presented with a variety of persons that the prosecution told them could count in making up the five persons necessary to trigger the statute. Granting that half of these persons could have been treated as countable, the jury had no instruction including the noncountables. We do not disagree with those circuits that have held the unanimity instruction is unnecessary. We do not need to reach that question. Rather, we hold that on these facts where the jury had a confusing array of persons presented, some of whom could be counted and some of whom could not be counted, it was plain error to fail to instruct the jury as to who could not count towards Jerome's conviction of a continuing criminal enterprise.

### The Testimony of Agent Dell'Ergo

■ Dell'Ergo was permitted to testify as an expert pertaining to CCE violations. As we have reversed the conviction on this count, it is unnecessary to consider the objections made. Part of his testimony was intended to bolster the case against Jerome as "the biggest fish in Lake Tahoe" in organizing the distribution of drugs deleterious to the community and to show that Jerome was not, as Jerome contended, a minor player. Whatever was objectionable in this part of his testimony may have rubbed off to Jerome's detriment on the other counts. But as to them the evidence was overwhelming, and any error in admitting Dell'Ergo's testimony was harmless.

### Conspiracy

There was ample evidence that Jerome had agreed with others to distribute drugs. His conviction of conspiracy stands.

### Count 24

Jerome contends that the only evidence he intended to distribute cocaine on April 3, 1986, of which he was convicted under Count 24, was his admission to Agent Dell'Ergo that he possessed a pound of cocaine. His conviction does not rest on this admission alone. Dell'Ergo, acting undercover, observed two cocaine transactions at Jerome's residence on the state. His testimony corroborated Jerome's admission.

### Juror Misconduct

■ The post-trial affidavit did not raise an issue requiring an evidentiary hearing. At most, it asserted information about the mental process of a juror. It showed no extraneous influence upon the juror's decision. *United States v. Langford*, 802 F.2d 1176 (9th Cir.1986), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740.

### Jerome's Sentence

Jerome's co-defendants pled guilty and received at the most a five year sentence. He went to trial and received 20 years for conspiracy. He claims he was penalized for exercising his right to trial.

■ The district court did not sentence Jerome to the maximum possible. There is no evidence that the court punished him for going to trial. Rather, the court noted that he was "far and away the first and most culpable in committing these crimes." The sentencing was within statutory bounds and did not offend the Eighth Amendment.

All convictions are AFFIRMED with the exception of the conviction of engaging in a continuing criminal enterprise, which is VACATED.

KOZINSKI, Circuit Judge, concurring:

I concur in the judgment. I would reverse the continuing criminal enterprise conviction because an essential element of such a conviction may not have been met: that the jury unanimously agree as to the identity of five people whom Jerome organized, managed or supervised, within the meaning of the statute. There are two problems here.

First, as the government conceded at oral argument before us, some of the people named by the prosecutor during his closing argument to the jury—the suppliers of Jerome's suppliers—could not have been organized, managed or supervised by Jerome under any reading of the statute. Yet the jurors may have counted some of these toward the five they concluded Jerome had organized. The jury instructions did not clarify that "suppliers of suppliers" could not meet the statutory definition; in fact, the instructions may have suggested the contrary. Instruction 46, given over the defendant's objection, stated that "[t]he ordinary meaning of the word 'organizer' does not necessarily carry an implication that to be an 'organizer' one must exercise control over others." CR 320, Instruction 46. Based on this instruction, the jurors may have concluded that Jerome "organized" the suppliers of his suppliers and thus may have counted one or more of the people improperly named by the prosecutor in his closing argument.

Second, the jury was not given a specific unanimity instruction, i.e., an instruction that the jurors must unanimously agree as to the identity of each of the five people Jerome organized, managed or supervised.[1] On the facts of this case, this was plain error. See *United States v. Gilley*, 836 F.2d 1206, 1211–13 (9th Cir.1988); *United States v. Payseno*, 782 F.2d 832 (9th Cir. 1986). A specific unanimity instruction must be given "when a 'genuine possibility' of juror confusion exists," i.e., when it is possible that some jurors will convict on the basis of one set of facts while others will convict on the basis of another set of facts. *Gilley*, 836 F.2d at 1211, quoting *United States v. Echeverry*, 719 F.2d 974, 974 (9th Cir.1983); *Payseno*, 782 F.2d at 837. This is the case here. Some twenty people were named by the prosecutor during his closing argument as potential prospects for meeting the five-person requirement. RT 2594–97. We have no way of knowing whether different jurors counted different people; given the large cast of characters, the complex relations among them and the large volume of evidence presented to the jury during the lengthy trial, it is entirely possible the jury did just that.

---

**1.** I cannot agree with the majority that the jury should have been instructed as to *"who could not count* towards Jerome's conviction of a continuing criminal enterprise." Maj. at 173 (emphasis added). The appellant has never argued that the jury should have been so instructed. Moreover, such an instruction might well have been improper. The judge may not make the factual determinations that necessarily underlie a conclusion that somebody was not organized by the defendant, e.g., that the person did nothing more than supply drugs to the defendant's supplier. The jury alone must determine what relationship and dealings each person had with the defendant.