**UNITED STATES of America, Plaintiff,**

**v.**

**Henry Willie QUINTANA, Jr., Defendant.**

**No. 92–CR–98G.**

United States District Court,
D. Utah, C.D.

Nov. 30, 1993.

David J. Schwendiman, Asst. U.S. Atty., Richard G. McDougell, Sp. Asst. U.S. Atty., and Richard D. McKelvie, U.S. Atty.'s Office, Salt Lake City, UT, for plaintiff.

Robert Booker, Booker & Whatcott, Salt Lake City, UT, for defendant.

## MEMORANDUM DECISION AND ORDER RE: MOTION FOR JUDGMENT OF ACQUITTAL

J. THOMAS GREENE, District Judge.

This matter is before the court on defendant's Motion for Judgment of Acquittal as to Count 1, operating a continuing criminal enterprise, notwithstanding the jury's verdict of "Guilty" as to that count. The parties have fully briefed the issues, and the court heard extensive oral argument on November 16, 1993, after which the matter was taken under advisement. Now being fully advised, the court makes and enters the following Memorandum Decision and Order.

### FACTUAL BACKGROUND

On September 10, 1993, Henry Willie Quintana, Jr., ("Quintana") was convicted of multiple counts of drug distribution as well as engaging in a continuing criminal enterprise ("CCE").[1] Quintana now urges this court to grant his motion for judgment of acquittal on the ground that the evidence presented at trial was insufficient to support a CCE conviction.

The evidence was unrefuted that Quintana was involved in trafficking large amounts of cocaine. The government also presented unrefuted evidence that Quintana was supplied cocaine by Juan Castanon and Richard Villanueva, and that Quintana supplied cocaine for further distribution to Randy Mondragon, Michael Fresquez and others. Randy Mondragon, Michael Fresquez and Juan Castanon testified that Quintana had no control over them, and that they did not belong to an organization controlled or managed by Quintana. Other persons involved with Quintana in drug transactions included his father, Henry Quintana, Sr., Rodrigo "Chino" Alanis, Jose "Pepe" Lopez, Johnny Salazar, Larry Cordova, "Ruben," "Negro," an unnamed person who stored cocaine, and an unnamed person who delivered for Quintana.

Extensive evidence was presented concerning drug distribution activities of Quintana. Much of the evidence was to the effect that Quintana "organized" other persons in a continuing scheme to facilitate the distribution of cocaine. The evidence with respect to Henry Quintana, Sr. was that Quintana supplied Henry, gave him instructions concerning the distribution and price of cocaine, and orchestrated deliveries to him. The transactions with Henry provide sufficient evidence that Quintana directed some unnamed person to deliver cocaine to Henry. The transactions with Henry also provide evidence that Quintana was fronting[2] cocaine to two men, "Pat" and "Larry," for distribution. Wiretap evidence of conversations between Quintana and Henry was to the effect that Jose "Pepe" Lopez delivered for Quintana, and that Lopez expected instructions from Quintana.

The evidence with respect to Juan Castanon indicated that he was one of Quintana's suppliers and that Quintana directed him concerning deliveries of cocaine. Mondragon and Fresquez were distributors who were "fronted" by Quintana. He arranged and confirmed deals with Fresquez. Both Mondragon and Fresquez testified that Quintana was their supplier. Quintana coordinated a deal between Fresquez and Mondragon, and directed them how to divide the cocaine. Quintana provided advice to Salazar about the cocaine business and arranged deliveries to Salazar through Eva Valdez. Quintana admitted in conversations with Salazar to paying an unnamed person to store cocaine for him, as well as paying "Chino" for delivering. Evidence was presented to the effect that Quintana supplied a person named "David" and that Richard Villanueva supplied Quintana.

The foregoing examples are typical of evidence presented by the government to show

---

1. The CCE count was count 1 of the 34 count indictment. The court dismissed counts 20 and 34, and Quintana was convicted on all of the other counts except count 30 (conspiracy). Quintana has moved for judgment of acquittal only on count 1, the CCE count.

2. In the drug business, the term "front" merely means to supply contraband on consignment, i.e., a supplier provides a distributor with cocaine on credit and the supplier does not pay until he has resold the drugs, presumably for a profit.

that Quintana played a central role in interaction with others relative to the sale and distribution of drugs.

### STANDARD OF REVIEW FOR SUFFICIENCY OF THE EVIDENCE

The standard of review for sufficiency of evidence claims is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Apodaca,* 843 F.2d 421, 425 (10th Cir.1988), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988) (citations omitted) (emphasis in original).

### ANALYSIS

Quintana contests the sufficiency of the evidence to uphold his conviction for operating a continuing criminal enterprise. He contends that the evidence was insufficient to show that he was an "organizer" or "supervisor" or that he occupied a "position of management" with respect to five or more persons. At the hearing on November 16, 1993, counsel for the government conceded that its theory of liability was that Quintana was an "organizer," as distinguished from a "supervisor" or a person in a "position of management." Accordingly, the determinative issue here is whether the evidence was such that any rational trier of fact could have found Quintana to be an "organizer" within the meaning of the statute.

Counsel for the government and for the defendant disagree as to the meaning of "organizer" for purposes of the CCE statute. Quintana argues and the government disagrees that the term "organizer" necessarily requires some type of managerial responsibility or influence. The parties also disagree as to whether organizational activities must be carried on through an "enterprise" as an entity, as opposed to engaging in prohibited acts apart from a structured "enterprise." Finally, there is dispute as to whether prosecutorial reference to persons who might have been "organized" by a defendant constituted prejudicial error.

### I. SCOPE AND MEANING OF THE TERM "ORGANIZER" UNDER THE CONTINUING CRIMINAL ENTERPRISE STATUTE

A person is engaged in a continuing criminal enterprise if:

(1) he violates any provision of this subchapter ... and

(2) such violation is a part of a continuing series of violations ...

(A) which are undertaken in concert with five or more other persons with respect to whom such person occupies a position of *organizer, a supervisory position, or any other position of management,* and

(B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c) (emphasis added).

A. The terms "organizer," "supervisor," and "position of management" are phrased in the disjunctive and each term is ascribed its separate, everyday meaning.

■ Defendant argues that in the context of the CCE statute an organizer must have managerial responsibilities in part because the term "organizer" is modified by the statutory language "or any *other* position of management." *Id.* § 848(c)(2)(A) (emphasis added). Counsel for defendant submits that under the statute a position of "organizer" is the equivalent of an "other position of management," hence, an organizer must possess managerial responsibilities.

In *United States v. Apodaca,* 843 F.2d 421, 426 (10th Cir.1988), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988), the Tenth Circuit explained that "the statute is phrased in the disjunctive. The defendant must have acted as organizer, as supervisor, *or* in any other position of management." (Emphasis in original). *See also United States v. Butler,* 885 F.2d 195, 200 (4th Cir. 1989). The Fifth Circuit recently declined to "assume the drafters [of the CCE statute] intended the words 'supervise' and 'manage' to be synonymous." *United States v. Hinojosa,* 958 F.2d 624, 630 (5th Cir.1992). Similarly, it is clear to this court that the words

"organize" and "manage" are not synony-mous.

The operative terms of the CCE statute—*organize, supervise,* and *manage,* are not technical terms and are ascribed their every-day meanings. *Apodaca,* 843 F.2d at 425–26. "Organize" means to "arrange or assemble into an orderly, structured, functional whole; to manage or arrange systematically for unit-ed or harmonious action." Webster's II New Riverside University Dictionary, 1984. "Manage" means "to direct or control." *Id.* An organizer, from the ordinary sense of the word, is not necessarily a manager. On the other hand, an "organizer" could also be a "manager." The statute does not *require* that a person charged with CCE must be both an organizer *and* a manager, however. It is sufficient, under the disjunctive lan-guage employed, simply to be an "organizer."

B.  An "organizer" need not possess man-agerial responsibilities for purposes of the CCE statute.

"Organizer" status under the statute re-quires that defendant occupy a central role in organizing the prohibited drug activities. The central role need not include control or managerial responsibility, but it must be more than a mere buyer-seller relationship.

The Tenth Circuit, in *Apodaca,* defined organizer as:

a person who puts together a number of people engaged in separate activities and arranges them in their activities in one essentially orderly operation or enterprise ... The ordinary meaning of the word 'organizer' does not carry with it the impli-cation that the organizer is necessarily able to control those whom he or she orga-nizes.

*Apodaca,* 843 F.2d at 426. The *Apodaca* court made it clear that while control over a person is a factor to be considered, a person charged with CCE need not have actual con-trol over those persons he is alleged to have organized. Rather, in *Apodaca* the court concluded that evidence is sufficient to con-vict if a defendant "occupied a *sufficiently central role* to be regarded as holding 'a position of organizer, a supervisory position, or any other position of management.'" *Id.* at 427 (emphasis added). In *Apodaca,* the court outlined five factors which in that case constituted a sufficiently "central role," more than a mere buyer-seller relationship. 843 F.2d at 427. *One,* that the people are deal-ers and not merely consumers and the defen-dant "fronted" them with drugs. *Two,* that the defendant instructed the people in receiv-ing new supplies for distribution. *Three,* the defendant offered to pay for legal counsel. *Four,* the defendant expressed his intent to "get everybody going again" when released from jail. And *five,* each of the other people involved testified to the managerial relation-ship held by the defendant with respect to them.

Quintana argues that more than simply putting drug deals together is required to satisfy the "organizer" element. In this re-gard, Quintana cites *United States v. Delga-do,* 4 F.3d 780 (9th Cir.1993). The defendant in *Delgado* sold to distributors, fronted them, and agreed to sell to one particular distribu-tor only if another would guarantee his debts to the defendant. *Id.* at 783–85. The *Delga-do* court purported to distinguish *Apodaca* on the grounds that the defendant in *Delgado* did not offer to pay legal fees of the other people and that there was no testimony that the people actually worked for Delgado. 4 F.3d at 785–86. However, the Tenth Circuit in *Apodaca* did not hold that all five of these factors must be present before one could be considered to be an "organizer, supervisor or manager." Rather, the factors were present-ed to demonstrate that in that case there was sufficient evidence to convict.

In *Delgado,* the Ninth Circuit held that simply setting up a system of supply does not satisfy the statutory requirement of manage-rial role, and that an "organizer" within the meaning of the statute must "exercise some sort of managerial responsibility." 4 F.3d at 784–85, 786 (citing *United States v. Jerome,* 942 F.2d 1328, 1331 (9th Cir.1991).[3] The

**3.** In *Jerome,* the Ninth Circuit held that the de-fendant's suppliers could not be counted as part of the five persons who must be organized by a

defendant for purposes of liability under the CCE statute. The court stated that "to be an organiz-

Ninth Circuit concluded that merely "fronting" for the defendant's distributors, without other indicia of control, was insufficient to show managerial responsibility. *Id.*, 4 F.3d at 787–88.

The Tenth Circuit's position in *Apodaca* on the scope of the term "organizer" under the statute is different and less demanding than the position taken by the Ninth Circuit as reflected in *Delgado.* Managerial responsibility is not required. *Apodaca* does stand for the proposition that more than a buyer-seller relationship is required to be an "organizer" or a "supervisor" or a "manager" for purposes of engaging in a continuing criminal enterprise. However, *Apodaca* does not stand for the proposition that one who organizes a system of supply for himself and for other distributors, must also occupy a position of management in order to be an "organizer" for purposes of the CCE statute. In this regard, the concurring opinion in *Delgado,* more correctly than the majority opinion, reflects the Tenth Circuit's position in *Apodaca.* The factors stressed by Judge Hall in her concurring opinion were that the defendant selected his distributors, arranged the supply of drugs, arranged the pickup by the distributors, arranged the timing, quantity and price of drug sales, and fronted for his distributors. 4 F.3d at 789–90.[4] Judge Hall described "organizers" in a way which, in this court's opinion, is wholly consistent with the Tenth Circuit's position in *Apodaca:*

> [O]rganizers can bring people together for a common purpose without exercising any degree of influence, control, or responsibility over those persons.

*Id.*

Other circuit courts have similarly construed the term "organizer" in the CCE statute. In *United States v. Butler,* the Fourth Circuit said:

> [W]hile proof of a supervisory or managerial relationship requires a showing of some degree of control by the defendant

over the other persons, such proof is not required to show that a defendant acts as an organizer. 'An organizer can be defined as a person who puts together a number of people engaged in separate activities and arranges them ... in one essentially orderly operation or enterprise'. 885 F.2d 195, 201 (4th Cir.1989) (citing 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instruction § 58.21 (1977)). In *United States v. Patrick,* 965 F.2d 1390, 1397 (6th Cir.1992), *vacated & rev'd on other grounds, United States v. Mohwish,* 993 F.2d 123 (6th Cir.1993), the Sixth Circuit recognized that an organizer is not "necessarily able to control those whom he or she organizes." The Sixth Circuit quoted the Tenth Circuit's definition of organizer as set forth in *Apodaca,* and held that the jury could infer that the defendant "organized" one person based on the defendant's presence when the other person packaged, distributed, and received payment for cocaine. *Id.* at 1397. In *United States v. Cruz,* 785 F.2d 399, 407 (2d Cir. 1986), the Second Circuit held that the fronting or consignment of drugs for sale on commission was sufficient to satisfy the organizational requirement of the CCE statute. *See also United States v. Mannino,* 635 F.2d 110, 117 (2d Cir.1980) (the second circuit court affirmed the conviction of the defendant who was a "middleman" in a large network of purchasers and suppliers).

In the case at bar, there was unrefuted evidence that Quintana supplied and fronted drugs to Mondragon and Fresquez, who were both distributors. The government also presented evidence that Juan Castanon and Richard Villanueva supplied cocaine to Quintana. There is evidence that Quintana directed Juan Castanon, "Pepe" Lopez and one other unnamed person in drug deliveries. Quintana, on a regular basis, directed Henry Quintana, Sr. as to the delivery, distribution and price of cocaine. Chino and at least one unnamed person were in the direct employment of Quintana. Evidence presented by

---

er ... more is required than simply being a steady customer". 942 F.2d at 1331.

**4.** Judge Hall also identified a wide range of activities which could be sufficient to create more than a buyer-seller relationship which include:

arranging acquisition and delivery, distributing drugs on consignment or credit, setting price and credit terms, arranging contacts and meetings, and transacting in large quantities with regularity. 4 F.3d at 790–91 (citations omitted).

the government was sufficient to permit the jury to find that Quintana actually controlled or managed Henry Quintana, Sr., Chino, Castanon, and an unnamed person who stored drugs for Quintana. Quintana facilitated and arranged for the supply and delivery of cocaine to all of the people discussed above and said that he needed to collect from "everybody".

The government was not obligated to present evidence that Quintana actually controlled or managed all of these people. The evidence was sufficient to convict if a reasonable jury could find that Quintana played a "sufficiently central role" in organizing at least five people in a drug distribution operation or "enterprise." The reasonable jury impanelled in the case at bar could and did so find.

## II. THE CONTINUING CRIMINAL ENTERPRISE STATUTE DOES NOT REQUIRE THE EXISTENCE OF A SEPARATE ENTITY OR "ENTERPRISE"

By definition a person engages in a "continuing criminal enterprise" under the statute if he or she participates in a "continuing series of violations" in concert with five or more persons as to whom the defendant occupies a position of "organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(c). Defendant urges this court to interpret "enterprise" to require the existence of an entity, similar to the "enterprise" required for purposes of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961 *et seq.*

The court rejects defendant's conception of "enterprise." It would violate the plain meaning of the statute to define "enterprise" as requiring the existence of a separate entity. The CCE statute equates "enterprise" with activities or conduct which constitute a series of violations, not necessarily requiring the existence of a separate or distinct entity. "Enterprise" generally means an undertaking or a project. *See* Webster's New Universal Unabridged Dictionary, 2d. ed., 1983. To interpret "enterprise" as requiring the existence of an entity would be contrary to the normal use of the term. In this regard, the Tenth Circuit in *Apodaca* equated "enterprise" with "operation" in the context of activities of people undertaken at the instigation of an "organizer." *Apodaca,* 843 F.2d at 426.

The Fifth Circuit has held that a RICO charge is not a lesser included offense of the CCE statute. *United States v. Phillips,* 664 F.2d 971, 1013 (5th Cir.1981), *cert. denied, Meinster v. United States,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). The Fifth Circuit recognized that to establish a RICO violation, there must be "proof of the existence of the enterprise itself." *Id.* at 1013. However, in contrast to RICO, the court noted that the CCE statute *"does not require proof of a RICO type enterprise.* Rather § 848[5] merely requires proof that the defendant undertook a continuing series of violations in concert or in conspiracy with five or more persons." *Id.* at 1013–14 (emphasis added). There is no language in *Apodaca* to indicate that the Tenth Circuit contemplated the existence of a RICO type enterprise as a requirement under the CCE statute. Moreover, there is no language in the statute to support such an interpretation.

Based upon the foregoing, this court concludes that no Rico-type "enterprise" or other separate organization or entity need exist in order for a defendant to be convicted of engaging in a continuing criminal enterprise.

## III. JURY MUST UNANIMOUSLY AGREE AS TO THE IDENTITY OF AT LEAST FIVE OTHER PERSONS WHO ACTED WITH THE DEFENDANT

Quintana argues that the government's closing argument was prejudicial because the prosecutor named fifteen persons who could be regarded as having been organized by the defendant in the alleged continuing criminal enterprise without clarifying

---

5. *Phillips* involved interpretation of 21 U.S.C. § 848(b), which is the predecessor to § 848(c).

The two sections are identical.

which satisfied the statutory requirement, and which did not.

The jury was given a unanimity instruction [6] which required the jury unanimously to agree upon the identity of at least five persons with whom the defendant acted in committing a series of violations. The court does not believe that the prosecutor's closing argument rose to the level of prejudicial error. Any error which the prosecutor may have made in his closing argument (which this court does not purport to rule upon) was clarified and rendered harmless by the unanimity instruction given the jury, to which defense counsel did not object. It was the failure of the court to give such a unanimity instruction in *United States v. Jerome*, 942 F.2d 1328, 1331 (9th Cir.1991), which gave rise to the problem with the prosecutor's closing argument which was held in that case to be plain error. Similarly, Judge Hall concurred in the result of overturning the conviction in *Delgado* because she determined that the court's failure to give a unanimity instruction to the jury in light of the government's closing argument, which named a variety of people who could be counted towards the requisite five for a CCE conviction, constituted prejudicial error. 4 F.3d at 790–92.

Based upon the foregoing, the court finds that sufficient evidence was presented by the government to allow a reasonable jury to have convicted Quintana as an "organizer" under the continuing criminal enterprise statute. Accordingly, it is hereby

ORDERED, that defendant's Motion for Judgment of Acquittal is DENIED.

---

**6.** Jury Instruction No. 48 was as follows:

If you find, beyond a reasonable doubt, that the defendant committed a narcotics offense and that this narcotics offense was part of a continuing series of violations of the narcotics laws, then you must decide whether the defendant committed this series of violations with five or more persons.

The defendant's relationships with the other persons need not have existed at the same time, the five or more persons involved need not have acted in concert at the same time or with each other, and the same type of relationship need not have existed between the defendant and each of the five or more persons. The defendant need not have had personal contact with each of the five or more persons involved. You must unanimously agree, however, on the identity of at least five persons with whom the defendant acted in committing the series of narcotics violations alleged by the government.