124 F.3d 214
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary JEROME, Defendant-Appellant.
 No. 96-16290.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted, August 5, 1997.
Decided Sept. 10, 1997.
 
 Appeal from the United States District Court for the District of Nevada, No. CV-95-00375-ECR; Edward C. Reed, Jr., District Judge, Presiding.
 Before: SNEED, FLETCHER, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gary Jerome appeals the denial of his 28 U.S.C. § 2255 motion to vacate his 1987 convictions and sentence on federal drug charges. We hold that Jerome was denied his Sixth Amendment right to effective assistance of counsel at trial. We do not reach the other issues raised in this appeal.[1]
 
 I.
 BACKGROUND
 
 3
 Petitioner was charged in 1987 with: (1) operating a continuing criminal enterprise (CCE); (2) conspiracy to distribute cocaine; (3) distribution of cocaine; (4) traveling or causing others to travel in interstate commerce for the purpose of conducting criminal drug activities; (5) use of a telephone to facilitate a drug conspiracy; and (6) conspiracy to distribute marijuana. United States v. Jerome, 942 F.2d 1328, 1330 (9th Cir.1991). The district court severed the marijuana charges and later dismissed them. Petitioner was tried and convicted on all other counts, but the CCE conviction was reversed on appeal. Id.
 
 A. The Evidence Against Jerome
 
 4
 The parties agree that the evidence of Jerome's guilt was "overwhelming." In reviewing petitioner's § 2255 motion, the district court concluded that "the evidence against Gary Jerome was massive."[2] The district court summarized the evidence as follows:
 
 
 5
 The government presented surveillance videotape of Gary Jerome bragging of his fifteen years' experience in narcotics trafficking and of his ability to move a kilogram of cocaine every month. The government presented evidence that prior to the March 1986 five-kilogram "sting" operation Jerome had frequently sold cocaine; the government proved at least 69 prior cocaine sales by Jerome. The government proved Jerome's involvement in a half-kilogram cocaine sale in 1984. The government introduced a tape-recorded confession by Jerome to multiple interstate sales of cocaine. The government introduced testimony by a DEA agent who had personally purchased two ounces of cocaine from Jerome.
 
 
 6
 Defense counsel was fully apprised of the "overwhelming" evidence against his client prior to trial.
 
 B. The Government's Plea Offer
 
 7
 Shortly before trial, the government offered to dismiss the CCE count of the indictment and to recommend a prison sentence of no more than twenty years, in exchange for petitioner's plea of guilty to the other charges in the indictment. The government contends that this was not a real plea offer, but "an invitation to negotiate." The district court characterized the offer as an "informal" offer, and assumed that it "would have ripened into a binding plea agreement ... had Jerome agreed to accept it."
 
 
 8
 The government presented the offer to petitioner's attorney, Carter King, who then discussed it with Jerome. In the context of the § 2255 proceeding, Jerome and King both submitted declarations providing their respective accounts of that discussion. King and Jerome agree about several elements of the discussion. King told Jerome "that the CCE charge against him was untenable and ridiculous." King told Jerome that he had a good entrapment defense to the other charges. King told Jerome that if he pled guilty "he would in fact receive a sentence of twenty years," and that King "did not think that he would receive a sentence of more than twenty years even after a trial at which he was convicted of all charges."
 
 
 9
 However, the declarations submitted by Jerome and King disagree about other elements of their conversation. Jerome claims that King advised him that he had a viable insanity defense. King says that he viewed the insanity defense as a "throwaway," and that he "never expected the jury to acquit Mr. Jerome on this basis." Jerome claims that King told him he had "a good chance for acquittal" on all charges. King denies having said that. Jerome claims that King stated specifically that the plea bargain "should be rejected." King says that he "did not recommend to Mr. Jerome that he accept or reject the government's plea offer."
 
 
 10
 Finally, Jerome's declaration alleges that King "did not explain to me that the sentence of no more than 20 years under the plea agreement would have been subject to parole, nor did he explain that any sentence I received under the CCE charge would not be subject to parole." King admits that he does not "recall including an explanation of the parole consequences of a CCE conviction versus an otherwise authorized twenty year sentence in the specific conversation" during which they discussed the government's plea offer. However, King's declaration states that "I believe that I discussed this issue with defendant Jerome at some juncture prior to trial."
 
 
 11
 Mr. King's conversation with his client resulted in Jerome's decision to reject the plea offer; the case proceeded to trial.
 
 C. King's Conduct At Trial
 
 12
 At trial, King presented three different lines of defense. First, in response to the CCE count, King "attempted to prove that Jerome was merely a small-time drug dealer, and therefore not guilty of maintaining a continuing criminal enterprise." In response to the other charges, King presented both an entrapment defense and an insanity defense. Specifically, "[h]e attempted to prove that Jerome was entrapped by the government into participating in the sale of a large quantity of cocaine," and he "attempted to prove that Jerome's chronic use of alcohol and other drugs rendered him legally insane."
 
 
 13
 In support of his § 2255 petition, Jerome submitted declarations of two experienced criminal defense attorneys. Both attorneys claim that King's conduct in defending Jerome at trial was incompetent in the following respects: (a) King misunderstood the defenses of entrapment and insanity; (b) King presented defenses that "conflicted so much as to be mutually exclusive;" (c) the insanity defense was "transparently invalid, if not obviously fabricated;" and (d) King failed to prepare witnesses properly, presented ineffective witnesses, engaged in self-destructive questioning of witnesses, and committed flagrant ethical violations.
 
 
 14
 The district court summed up its view of King's performance as follows:
 
 
 15
 Carter King is no Clarence Darrow. He is no Johnnie Cochran. He may well occupy a position near the nadir of professional legal expertise. Nevertheless, it cannot be said ... that King's strategic or tactical choices in his defense of Gary Jerome fell so far outside the permissible range of professional choices that his assistance was constitutionally ineffective.
 
 D. Section 2255 Proceedings
 
 16
 On June 13, 1995, petitioner filed a motion, pursuant to 28 U.S.C. § 2255, to vacate his convictions and sentence. The government filed a brief in opposition on February 26, 1996. In May 1996, the parties filed with the district court a proposed settlement agreement, in which the parties stipulated
 
 
 17
 that the incompetent and unreasonable advice of trial counsel caused rejection of a proferred plea agreement which petitioner should have and otherwise would have accepted, resulting in a prejudicial deprivation of petitioner's Sixth Amendment right to effective assistance of counsel.
 
 
 18
 On June 12, 1996, the district court filed a written order rejecting the parties' proposed settlement agreement and denying Jerome's § 2255 petition. Jerome timely appealed. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2255. We reverse.
 
 II.
 INEFFECTIVE ASSISTANCE OF COUNSEL
 
 19
 Ineffective assistance of counsel is a mixed question of law and fact that this court reviews de novo. United States v. Blaylock, 20 F.3d 1458, 1464-65 (9th Cir.1994).
 
 
 20
 In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for claims that a criminal defendant has been deprived of his Sixth Amendment right to effective assistance of counsel. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, to demonstrate prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 
 
 21
 Petitioner contends that he was denied his Sixth Amendment right to effective assistance of counsel first, at the plea bargaining stage, and second, during the conduct of the trial. We do not reach the question of whether Jerome was deprived of effective assistance during the conduct of the trial, because we hold that he was prejudicially deprived of his constitutional right during the plea bargaining phase.
 
 A. Objective Reasonableness
 
 22
 Petitioner claims that counsel's incompetent advice during the plea process fell below the objective standard of reasonableness Strickland requires. Assessment of this argument "requires that every effort be made to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.
 
 
 23
 Inasmuch as the district court did not hold an evidentiary hearing on the § 2255 petition, the court made no findings of fact to resolve the inconsistencies between the declarations submitted by Jerome and King describing the advice King gave Jerome in response to the government's plea offer. We assume, without deciding, that Carter King's declaration provides a true account of the advice he provided, because King's declaration describes that advice in the light most favorable to himself. We disregard Jerome's account of the advice he received from King, except insofar as it agrees with King's declaration. We analyze separately each of the discrete pieces of advice at issue.
 
 
 24
 1. The CCE Count: King admits telling Jerome that "the CCE charge against him was untenable and ridiculous and that at trial I felt he would be acquitted of this charge." Given the paucity of evidence to support the CCE charge, King's prediction of acquittal on the CCE count was reasonable at the time.
 
 
 25
 2. Sentencing Predictions: King admits advising Jerome of his beliefs that: (1) if Jerome pled guilty, "he would in fact receive a sentence of twenty years;" and (2) he would not receive more than twenty years "even after a trial at which he was convicted of all charges." In fact, Jerome was sentenced to forty years, which was reduced to thirty-five years on appeal.
 
 
 26
 Appellant contends that King's inaccurate prediction of the sentence was objectively unreasonable. This court has held that "an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea." United States v. Michlin, 34 F.3d 896, 899 (9th Cir.1994) (quoting United States v. Garcia, 909 F.2d 1346, 1348 (9th Cir.1990)). However, "an exception might be made in a case of gross mischaracterization of the likely outcome." Id.
 
 
 27
 In Doganiere v. United States, the attorney advised his client that "he would receive a sentence of not more than twelve years imprisonment if he pleaded guilty." 914 F.2d 165, 168 (9th Cir.1990). The defendant pled guilty, and the court sentenced him to fifteen years imprisonment, with a subsequent twenty year term of probation. This court held that the "attorney's inaccurate prediction of what sentence Doganiere would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel." Id. Although Jerome's claim is stronger than Doganiere's, King's inaccurate prediction of the sentence does not rise to the level of a "gross mischaracterization of the likely outcome," and thus does not amount to ineffective assistance of counsel.
 
 
 28
 3. Entrapment: King admits telling Jerome that "I thought he had a good entrapment defense" to all the charges (not just the CCE charge). However, declarations submitted by two experienced criminal defense attorneys suggest that any reasonably competent defense attorney would have known, prior to trial, that Jerome did not have a good entrapment defense, and that Jerome was unlikely to win an acquittal on the basis of that defense. Nonetheless, the district court disagreed, concluding that "the record reveals a colorable, if less than compelling case for entrapment, at least with respect to the five-kilo sale." (Emphasis added.)
 
 
 29
 We disagree. Jerome may have had a colorable entrapment defense with respect to the five-kilo sale, because the defense of entrapment revolves around the notion of predisposition, and Jerome had never before orchestrated a drug deal of such magnitude. But the five-kilo sale was only one of ten different counts in which Jerome was indicted for distribution of cocaine. The other counts all involved smaller quantities, ranging from one gram to 500 grams. Moreover, the district court specifically found that "the government proved at least 69 prior cocaine sales by Jerome." Thus, it was simply not credible to argue that Jerome lacked the predisposition to distribute cocaine in smaller quantities. Hence, Jerome did not have a viable entrapment defense to the counts involving distribution of cocaine, other than the five-kilo sale. Therefore, we hold that King's statement that Jerome had a good entrapment defense on all charges fell below the objective standard of reasonableness Strickland requires.
 
 B. Prejudice
 
 30
 When a defendant claims that he was deprived of effective assistance of counsel during the plea process he is, unlike claims of ineffective assistance during trial, not required to show that the result was "unreliable," or "fundamentally unfair" in order to demonstrate prejudice. See Blaylock, 20 F.3d at 1466 ("although Blaylock has received a fair trial, he is not precluded from showing prejudice"). To demonstrate prejudice arising from ineffective assistance in the plea process, the defendant need only "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).
 
 
 31
 In contrast to Hill v. Lockhart, where the petitioner alleged that counsel's poor advice caused him to accept a plea offer, Jerome claims that counsel's bad advice caused him to reject a plea offer. Thus, to demonstrate prejudice, Jerome must show there is a reasonable probability that, but for counsel's errors, he would have pled guilty and would not have gone to trial. See Blaylock, 20 F.3d at 1466 (defendant must show "there was a reasonable probability that, but for his attorney's deficient performance ... he would have accepted the plea offer").
 
 
 32
 The district court concluded that Jerome "cannot establish the requisite reasonable probability that but for counsel's alleged ineffective assistance, he would have accepted the offer to plead." In reaching this conclusion, the court failed to consider the parties' stipulation that the "advice of trial counsel caused rejection of a proferred plea agreement which petitioner ... otherwise would have accepted." Whether Jerome would have accepted the plea agreement, if counsel had offered better advice, is a question of fact. The court is required to accept the parties' stipulations insofar as those stipulations pertain to factual issues. Therefore, we hold that Jerome has satisfied Strickland's prejudice prong by demonstrating that "there was a reasonable probability that, but for his attorney's deficient performance ... he would have accepted the plea offer." Blaylock, 20 F.3d at 1466.
 
 III.
 APPROPRIATE REMEDY
 
 33
 "Cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." United States v. Morrison, 449 U.S. 361, 364 (1981). The Supreme Court has indicated that specific performance of a plea agreement is a constitutionally permissible remedy in some cases. See Santobello v. New York, 404 U.S. 257, 263 (1971).
 
 
 34
 In Blaylock, 20 F.3d 1458, we held that the defendant was denied his right to effective assistance of counsel because his attorney failed to inform him that the government had made a plea offer. We concluded that the remedy for ineffective assistance of counsel "should put the defendant back in the position he would have been in if the Sixth Amendment violation had not occurred." Id. at 1468. We explained that "where, as here, the defendant was deprived of the opportunity to accept a plea offer, putting him in the position he was in prior to the Sixth Amendment violation ordinarily will involve reinstating the original offer." Id.
 
 
 35
 Here, too, in order to restore Jerome to his earlier position, we must vacate the convictions and remand to the district court, which shall direct the government to reinstate its original plea offer (i.e., to recommend a prison sentence of no more than twenty years). There being no evidence of prejudice on the part of Judge Reed, we deny Jerome's request that his case be reassigned to a different judge on remand.
 
 
 36
 The district court's order of June 12, 1996 is REVERSED, and Jerome's 1987 convictions are VACATED. The case is REMANDED with instructions to reinstate the government's original plea offer.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Jerome's other claim is that the district court in the § 2255 proceeding erred by rejecting the parties' proposed settlement agreement and by failing to hold an evidentiary hearing
 
 
 [2]
 The characterization of the evidence as "massive" does not refer to the marijuana counts, which were dismissed, or to the CCE count, which was reversed on appeal