**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose GARCIA, Defendant–Appellant.**

No. 91–10150.

United States Court of Appeals, Ninth Circuit.

Argued Sept. 17, 1992.

Submission Deferred Sept. 22, 1992.

Submitted Oct. 2, 1992.

Decided March 10, 1993.

William L. Osterhoudt, San Francisco, CA, for defendant-appellant.

Jeffrey L. Bornstein, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before: SCHROEDER, NORRIS, and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

Jose Luis Garcia was charged with engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848,

conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841, unlawful use of a communication facility in violation of 21 U.S.C. § 843, and money laundering in violation of 18 U.S.C. § 1956. Garcia was convicted on all counts after a jury trial and now appeals.

The government's theory of the case was that Garcia was the leader of a large cocaine distribution organization between 1987 and 1989. The evidence at trial showed Garcia's involvement with numerous individuals in several transactions over the period of those years. There was evidence that Garcia used a hobby shop that he owned as cover for the drug trafficking business he operated. There was also evidence concerning Garcia's 1988 state court conviction for conspiracy to purchase 43 kilograms of cocaine in Fresno, California, in 1987. This evidence played a prominent role in the government's case in chief. The other crimes that formed the basis of the CCE charge were alleged to have taken place in 1989.

In this appeal, Garcia's main challenge is to the admissibility of the Fresno conviction and the facts underlying that conviction. He maintains that the evidence did not qualify as a CCE predicate offense and that the episode at trial was therefore not only improperly admitted, but the overall evidence was insufficient to prove a CCE offense. In addition, Garcia argues that there was plain error in connection with two jury instructions, and that the cross-examination of a principal government witness was improperly curtailed. We affirm in all respects.

### I. The Fresno Conviction

■ The Fresno drug offense and conviction rose out of a government "reverse sting" operation in which Garcia arranged to buy 43 kilograms of non-existent cocaine. The United States introduced evidence about the Fresno transaction to support the CCE charge. In applying the "continuing criminal enterprise" definition contained in 21 U.S.C. § 848(b), we have broken down the elements of the crime into five components. "In order to prove a continuing criminal enterprise, the government must show that (1) the defendant's conduct constituted a felony violation of federal narcotics law; (2) the described conduct occurred as part of a continuing series of violations; (3) the defendant undertook the activity in concert with five or more persons; (4) the defendant acted as the organizer, supervisor or manager of the criminal enterprise; and (5) the defendant obtained substantial income or resources from the purported enterprise." *United States v. Sterling*, 742 F.2d 521, 525 (9th Cir.1984) (citations to code omitted), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985). The "continuing series of violations" requirement can be satisfied by showing three or more federal narcotics violations. *Id.* at 526; *United States v. Valenzuela*, 596 F.2d 1361, 1367 (9th Cir.), *cert. denied*, 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979).

The government introduced the Fresno evidence to prove one of the three CCE predicate violations and also to show that the defendant obtained substantial income or resources from his illicit drug dealings. The evidence showed that he furnished $70,000 to show his good faith and ability to carry through on the entire transaction, and that he frequently spoke of the large extent of his drug operations. The government eventually recovered $349,000 that was apparently earmarked for completion of the Fresno deal.

### A. Has Garcia Waived His Right to Challenge the Fresno Evidence?

■ The government initially asks us not to reach the merits of Garcia's challenge to the Fresno evidence. The government contends that Garcia waived his right to challenge the evidence on appeal because defense counsel questioned potential jurors during voir dire about whether knowledge of a past criminal drug conviction would influence their decision. The government relies upon *United States v. Williams*, 939 F.2d 721 (9th Cir.1991). In *Williams* we held that a defendant waives the right to

968

challenge on appeal the trial court's pretrial ruling that a prior conviction can be used by the prosecution for impeachment purposes when the defendant himself brought out the fact of the prior conviction on direct examination. In *Williams* we relied upon our earlier decision in *Shorter v. United States*, 412 F.2d 428, 431 (9th Cir.), *cert. denied*, 396 U.S. 970, 90 S.Ct. 454, 24 L.Ed.2d 436 (1969), and we recognized that defendants frequently wish to "remove some of the sting from cross-examination" by bringing out the witness' conviction on direct. *Williams*, 939 F.2d at 724 n. 3 (quotations omitted).

This case is not remotely similar to *Williams* or *Shorter*. Here the defense did not introduce any criminal conviction into evidence. Counsel merely referred to it during voir dire. In addition, the government did not intend to use the prior conviction for impeachment; the evidence was an important part of the prosecution's case in chief. Moreover, the evidence to be used was not limited to the fact of conviction, but went to all of the underlying circumstances of the crime committed and even included tape recorded conversations of the defendant's participation. The nature of the evidence was not referred to at voir dire. These factors independently distinguish this case from the situation in *Shorter* and *Williams;* in those cases, the defense during direct examination elicited the very same information it wished to challenge as impeachment by the prosecution. That did not occur here, thus there was no waiver. Accordingly, we reach the merits of defendant's challenges to the Fresno evidence.

### B. Is the Fresno Evidence Admissible?

■ Garcia's principal challenge to the Fresno evidence is that the Fresno activities are not sufficiently related to the other alleged narcotics violations so as to be considered part of a continuing criminal enterprise. Garcia argues that none of the people involved in the Fresno activities were the same as those involved in later transactions, that the Fresno offense occurred at a different time and place, and that the evidence is insufficient to prove that he was acting as an organizer or supervisor in connection with the contemplated Fresno transaction.

The record belies Garcia's contentions. Evidence presented at trial demonstrated that in the course of the Fresno dealings, Garcia was working with associates out of the hobby shop in San Diego at which he laundered large amounts of money that he used in his drug trafficking. Throughout the negotiations for drugs, Garcia stated that his associates understood that the profit from the deal would be divided between Garcia and one other individual. Garcia was thus clearly in charge of all arrangements for the deal. The Fresno deal was clearly part of an ongoing business operation and not an isolated episode.

Although Garcia is correct that the evidence did not show that he supervised anyone in the Fresno area, the evidence does clearly show that he supervised individuals elsewhere. Additionally, the Fresno dealings were part of a larger illicit drug operation in which he had a management role. Finally, he told agents that the people involved in the Fresno transaction were the same as those who manufactured the PCP he sold along with the cocaine.

The Fresno evidence was therefore relevant to establishing one of the three narcotics violations required to prove a continuing criminal enterprise. Although the government did not prove that Garcia was supervising the same people in his Fresno dealings that he supervised in the other alleged narcotics violations, such proof is unnecessary. We have held that the government need not prove that the organizer of the enterprise worked with five people at the same time during the continuing series of violations. *United States v. Smith*, 690 F.2d 748, 750 (9th Cir.1982), *cert. denied*, 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983). The evidence was therefore sufficient to prove all elements of the CCE charge.

### II. The Jury Instructions

■ One of the elements of the CCE offense is that the defendant must have

managed or supervised at least five persons. *See* 21 U.S.C. § 848(b)(2)(A). Garcia contends that the district court erred by failing to instruct the jurors that they must unanimously agree on the persons found to be managed or supervised by Garcia. The district court gave a general unanimity instruction to the effect that the jury must unanimously agree that the defendant committed all elements of the charges. Garcia did not request a specific instruction on unanimity with respect to the persons managed or supervised. We therefore review for plain error. "A plain error is a highly prejudicial error affecting substantial rights." *United States v. Payne,* 944 F.2d 1458, 1463 (9th Cir.1991) (quoting *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)), *cert. denied,* — U.S. —, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992).

A general unanimity instruction is usually sufficient unless a "genuine possibility" of juror confusion exists. *United States v. Gilley,* 836 F.2d 1206, 1211–12 (9th Cir. 1988). We held in *United States v. Jerome,* 942 F.2d 1328, 1331 (9th Cir.1991), that the district court was required to instruct specifically that jurors must unanimously agree on the identity of the individuals the defendant managed in that case. In *Jerome* we so held because the group of people presented to the jury included individuals who could not have been organized or managed by the defendant. *Id.* By contrast, evidence here would support a jury finding that defendant managed or supervised all of the individuals whom the government argued the defendant had managed or supervised. Thus, the danger that existed in *Jerome* did not exist here; there was no possibility that jurors could have based their decision on a person who was not supervised by Garcia.

Garcia also maintains that the district court erred by failing to instruct the jury that the government had to prove an overt act as part of its charge of conspiracy. There was no objection at trial. Garcia was convicted both of the conspiracy and the substantive offense, so that the jury must have found an overt act was committed in furtherance of the conspiracy. *See United States v. Garza,* 980 F.2d 546 (9th Cir.1992). There was no plain error.

### III. Cross–Examination

■ One of the government's principal witnesses was Philip Walsh. Walsh participated in several drug transactions with Garcia. In return for his testimony, Walsh was granted immunity for any possible involvement in a murder. The district court permitted defense counsel to cross-examine Walsh on any possible bias and motivation for testifying, including the fact that he was involved in the murder investigation and did not want that investigation pursued. The district court did not, however, permit defense counsel to inquire as to the extent of Walsh's actual involvement in the murder itself and the events surrounding it.

This was a just ruling. For impeachment purposes, the relevant information for the jury was Walsh's possible bias and motivation for testifying. The details of his involvement in the crime were at most only marginally relevant for impeachment purposes. There was no abuse of discretion. *See United States v. Bonanno,* 852 F.2d 434, 439 (9th Cir.1988), *cert. denied,* 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 801 (1989) ("once cross-examination reveals sufficient information with which to appraise a witness's possible bias and motives, confrontation demands are satisfied").

AFFIRMED.