24 F.3d 251
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Emmitt Gene MILLER, Sr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Clifford WHITMORE, aka Lil Tommy, aka Young Tommy,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oscar L. COLEMAN, aka Pancho, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Trayveon LIVINGSTON, Defendant-Appellant.
 Nos. 91-50221, 91-50240, 91-50299 and 91-50736.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1993.
Decided May 13, 1994.
As Modified Aug. 4, 1994.
 
 Before: SKOPIL, HALL, and RYMER, Circuit Judges.
 
 
 1
 Memorandum*
 
 
 2
 Oscar Lidell Coleman, Thomas Clifford Whitmore, Emmitt Gene Miller, Sr., and Trayveon Livingston appeal their convictions for a variety of narcotics related offenses. Coleman and Miller also appeal their respective sentences. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm all but Whitmore's conviction on count 37 and Miller's sentence on counts 23, 26 and 27 in this memorandum, and we affirm in separate opinions Whitmore's conviction on counts 25 and 30 and Coleman's sentence.
 
 I. Oscar Lidell Coleman
 
 3
 Coleman appeals his conviction, following entry of a conditional guilty plea, for possession of cocaine base with intent to distribute (count 38). Coleman also appeals his sentence, claiming that the distinction between crack and cocaine powder, set forth in U.S.S.G. Sec. 2D1.1 and 21 U.S.C. Sec. 841(b), violates his rights under the Equal Protection Clause of the U.S. Constitution. We address this issue separately.
 
 
 4
 A. Search of Coleman's Residence.
 
 
 5
 Coleman contends that the warrant was unsupported by probable cause.
 
 
 6
 We review for clear error a magistrate judge's determination regarding probable cause to issue a search warrant. United States v. Garza, 980 F.2d 546, 550 (9th Cir.1992). "For an affidavit in support of a search warrant to establish probable cause, the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." Id. (quotation omitted).
 
 
 7
 Noting that "[o]nly about 30 paragraphs of the 478 paragraph affidavit [underlying the warrant] made any reference to Mr. Coleman," Coleman maintains that the affidavit failed to establish probable cause to believe that the narcotics or narcotics related items described in the search warrant would be found in his 3640 Kensley Drive residence. Coleman asserts that the affidavit reflected no "hard evidence" of his involvement in drug trafficking, and he claims that, according to the affidavit, all of his suspected narcotics activity occurred at locations outside of his home.
 
 
 8
 Coleman's argument fails. The affidavit of DEA Special Agent Marzullo recounted detailed information obtained from surveillance efforts and the wiretap on Thomas Whitmore's telephone implicating Coleman as a direct participant in various narcotics transactions. Based on this substantial evidence, it was reasonable for the magistrate judge to infer that contraband was likely to be found at Coleman's residence. See United States v. Baldwin, 987 F.2d 1432, 1435 (9th Cir.) ("Based on the nature of the evidence and the type of offense, a magistrate may draw reasonable inferences about where evidence is likely to be kept. We have previously recognized that in the case of drug dealers, evidence is likely to be found where the dealers live."), cert. denied, 113 S.Ct. 2948 (1993) (quoting United States v. Garza, 980 F.2d 546, 550-51 (9th Cir.1992)). The magistrate judge's determination of probable cause was not erroneous.[1]
 
 
 9
 Second, Coleman asserts that even if there were probable cause to support issuance of the search warrant, the warrant did not authorize Government agents to open his locked bedroom safe, which contained 252 grams of cocaine base and a scale. Whether police exceeded the scope of a warrant in their search is reviewed de novo. United States v. Ayers, 924 F.2d 1468, 1480 (9th Cir.1991).
 
 
 10
 Coleman's argument is without merit. The warrant authorized the search of Coleman's residence, and all "rooms, attics, basements and other parts therein ... [and] any ... storage rooms or storage lockers ..." for various items associated with narcotics trafficking. While a "safe" was not specifically designated in the warrant, it "would be a logical container for any of the many things specifically described in the warrant." United States v. Gomez-Soto, 723 F.2d 649, 655 (9th Cir.) (locked briefcase within the scope of warrant's authorization), cert. denied, 466 U.S. 977 (1984). Coleman's assertion that a locked safe is not the type of personal effect contemplated in Gomez-Soto is unsupported. Moreover, a safe is the functional equivalent of a "storage locker"--which was expressly identified in the warrant as a permissible container for search. The agents' search of the closed safe was therefore within the scope of the warrant's authorization.
 
 
 11
 B. Wiretap Evidence.
 
 
 12
 Coleman argues that the district court improperly denied the defendants' joint motion to suppress evidence obtained from wiretaps placed on the home telephone and cellular telephone of Thomas Whitmore. For the reasons we set out in connection with Miller's argument on this point in which Coleman joins, we disagree.
 
 II. Thomas Clifford Whitmore
 
 13
 Whitmore appeals his conviction, following a jury trial, on sixteen counts of narcotics related activity, including conspiracy to manufacture and distribute cocaine (count 1), and attempt to possess cocaine with intent to distribute (counts 7, 29, 34, 37), both in violation of 21 U.S.C. Sec. 846, and being a principal administrator of a continuing criminal enterprise (count 44), in violation of 21 U.S.C. Sec. 848(b).[2]
 
 A. Sufficiency of the Evidence
 
 14
 Whitmore argues that there was insufficient evidence to support his conviction on the conspiracy count, the CCE count, and three of four attempt counts. A jury's verdict must be sustained if after viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 15
 Whitmore contends that his conspiracy conviction must be reversed because the evidence produced at trial failed to demonstrate the existence of the single, four-year conspiracy charged in count 1. Rather, in Whitmore's view, there was a prejudicial variance in that the proof at trial pointed to five discrete conspiracies, unconnected by any overall agreement.[3]
 
 
 16
 "A variance in proof occurs when the charging terms of the indictment are not challenged, but the evidence offered at trial proves facts materially different from those alleged in the indictment." United States v. Soto, 1 F.3d 920, 922 (9th Cir.1993). However, "[r]eversal is called for if the variance between the indictment and the proof affects the substantial rights of the parties." United States v. Kenny, 645 F.2d 1323, 1334 (9th Cir.), cert. denied, 452 U.S. 920 (1981). "Such prejudice may result in three ways: 1) inadequate opportunity to prepare a defense and exposure to unanticipated evidence at trial, 2) deprivation of the right to be tried only on charges presented in an indictment returned by a grand jury, and 3) exposure to prejudicial evidentiary spillover." United States v. Morse, 785 F.2d 771, 775 (9th Cir.), cert. denied, 476 U.S. 1186 (1986) (citations omitted).
 
 
 17
 Even if there were insufficient evidence to support the jury's finding of a single conspiracy, Whitmore has not demonstrated prejudice to his substantial rights as result of the variance. Whether Whitmore played a central role in the single conspiracy charged in the indictment, or was at the center of five separate (yet still major) conspiracies, Whitmore is chargeable with the same aggregate of overt acts in each instance. Whitmore points to no evidence that was unrelated to his personal role in narcotics trafficking activities. Further, while the conspiracy charged in count 1 is a predicate act for Whitmore's CCE conviction (count 44), any of the smaller "separate" conspiracies hypothesized by Whitmore would serve the same purpose.
 
 
 18
 Second, Whitmore contends that his CCE conviction cannot stand because there was insufficient evidence that he "managed, organized, or supervised" five persons. "In order to prove a continuing criminal enterprise, the government must show that (1) the defendant's conduct constituted a felony violation of federal narcotics laws; (2) the described conduct occurred as part of a continuing series of violations; (3) the defendant undertook the activity in concert with five or more persons; (4) the defendant acted as the organizer, supervisor or manager of the criminal enterprise; and (5) the defendant obtained substantial income or resources from the purported enterprise." United States v. Garcia, 988 F.2d 965, 967 (9th Cir.1993); United States v. Hernandez-Escarsega, 886 F.2d 1560, 1570 (9th Cir.1989), cert. denied, 497 U.S. 1003 (1990); see also 21 U.S.C. Sec. 848. The terms "organizer," "supervisor," and "manager" are given their common meaning and do not need to be defined specifically by the jury instructions. Hernandez-Escarsega, 886 F.2d at 1571. The defendant's relationships with the five supervised or managed individuals need not have existed at the same time. United States v. Apodaca, 843 F.2d 421, 426 (10th Cir.), cert. denied, 488 U.S. 932 (1988).
 
 
 19
 The indictment specifically identified nine individuals subject to Whitmore's supervision or management: Andrew Askins, Marlon Askins, Oscar Coleman, Keysha Marshall, Emmitt Miller, Clifford O'Connor, Tara Rivers, Dario Stevenson, and Sharey Willis. During closing argument, the prosecutor explained to the jury that in order to convict Whitmore for engaging in a CCE, it had to find "that defendant Whitmore acted as an organizer, supervisor, or manager" of at least five of the nine individuals named in the indictment.
 
 
 20
 Whitmore argues that no rational trier of fact could have concluded that Marlon Askins and Martin Askins were anything more than "innocent chauffeurs" without knowledge of Whitmore's illegal activities, that the jury's acquittal of Whitmore with respect to the Lorenzo Myrick charges meant that Clifford O'Connor could not have been a supervisee, that other participants were merely buyers or sellers and could not be considered as having been managed or supervised by Whitmore, and that Keysha Marshall and Tara Rivers were simply Whitmore's "girlfriends" who occasionally did favors for Whitmore. Whitmore maintains that, at most, Emmitt Miller and Sharey Willis were the only two participants who were "supervised" within the meaning of the CCE statute.[4]
 
 
 21
 Whitmore's argument fails; there was sufficient evidence to support a jury finding that Whitmore "supervised," "managed," or "organized" each of the seven individuals who Whitmore claims were not supervisees. There was testimony that Whitmore summoned Clifford O'Connor to a Carl's Jr. restaurant where O'Connor received 20 kilograms of cocaine from Polis, Joseph Aldana's courier. Further, when the Detroit buyers "shorted" Whitmore on payment for a 10 kilogram delivery, Whitmore chased after them in a blue van, along with three armed men, one of whom was named "Cliff." Myrick and Harrinson testified that O'Connor had a customized blue van. Myrick also testified that Hamilton and O'Connor made reference to "Young Tommy"--i.e., Whitmore--being the source of supply. Dario Stevenson acted under O'Connor's direction in delivering cocaine to Myrick and in attempting to threaten Myrick into paying for the 3 kilograms of cocaine which O'Connor had "fronted" to Myrick in February 1990.[5] As there is strong indication that Stevenson worked for O'Connor, and that O'Connor, in turn, was Whitmore's supervisee, Whitmore can be charged as Stevenson's supervisor. Apodaca, 843 F.2d at 426. The evidence established that Keysha Marshall acted at Whitmore's direction in relaying messages, taking cocaine orders from customers, and warning Whitmore about government surveillance. Additionally, at Whitmore's request, Tara Rivers aided Whitmore in the cocaine distribution process, and permitted Whitmore to use her apartment to store and process cocaine. Finally, based on the nature of the contraband seized from Whitmore's mother's Bronco and testimony that leaders of narcotics organizations often travel with bodyguards, a rational trier of fact could have concluded that Marlon and Martin Askins were more than mere "innocent chauffeurs."
 
 
 22
 Finally, Whitmore argues that there was insufficient evidence to support his conviction on counts 29, 34, and 37 for attempt to possess cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 846. A conviction for attempt requires proof of both "culpable intent" and "conduct constituting a substantial step toward commission of the crime that is in pursuit of that intent." United States v. Smith, 962 F.2d 923, 928 (9th Cir.1992) (citations omitted). Whitmore focuses on the second element, contending that there was no evidence that he took the necessary steps toward the completion of each offense; he asserts that, at most, he is chargeable with "mere preparation." Whitmore maintains that, in each instance, the only evidence supporting his conviction was a taped telephone call.
 
 
 23
 With respect to Whitmore's conviction on counts 29 and 34, a rational trier of fact could have found that Whitmore's conduct went "beyond mere preparation" and was "corroborative of the firmness of [Whitmore's] criminal intent." Id. at 930. In both instances, consistent with his usual mode of operation, Whitmore placed an order with one of his regular sources of supply, Joseph Aldana, or Aldana's associate Harrinson. Whitmore's telephone communications on July 21, 1990 and July 27, 1990 were not "inquiries as to the possibility of arranging a future transaction," but were firm orders, unfilled only because of short supply. Thus, Whitmore did "all that he could do to ensure the deal's completion." Id.[6]
 
 
 24
 In contrast to Whitmore's actions with respect to counts 29 and 34, however, the evidence is insufficient to support his conviction on count 37. On August 3, 1990, Morgan asked for one "carburetor" and Whitmore replied that he would place the order right away. There is no evidence that Whitmore ever did anything more to procure the kilogram of cocaine for Morgan. Thus, while Morgan may have ordered a kilogram of cocaine from Whitmore, Whitmore merely expressed his willingness to act on Morgan's behalf, but made no step toward completion of the deal. Thus, Whitmore's conviction on count 37 must be reversed.
 
 
 25
 B. Jury Instructions.
 
 
 26
 Relying on United States v. Jerome, 942 F.2d 1328, 1331 (9th Cir.1991), Whitmore argues that the district court's failure sua sponte to instruct the jury that they must unanimously agree on the five individuals who were "supervisees" mandates reversal of his CCE conviction. As Whitmore never requested such an instruction at trial, this court reviews for plain error and should reverse only if the failure to instruct was highly prejudicial, with a high probability of substantially affecting the jury verdict. United States v. Garcia, 988 F.2d 965, 969 (9th Cir.1993).
 
 
 27
 There was no error. As explained in United States v. LeMaux, 994 F.2d 684, 688 (9th Cir.1993), "[t]hough the holding in Jerome required a unanimity instruction for supervisees, it is expressly limited to a situation where some of the supervisees, presented as such by the government to the jury, could not legally have been supervisees." See also Garcia, 988 F.2d at 969. Each of those identified by the government as possible supervisees here was eligible. See Section II.A, supra.
 
 
 28
 C. Motion for a Continuance.
 
 
 29
 Whitmore's substitute trial counsel, Karen Woods, was appointed on September 24, 1990, approximately one month after the indictment was filed. On the date of Woods's appointment, the district court set November 9, 1990 as the deadline for the filing of defense motions, and vacating the previously established trial date, continued trial until December 18, 1990. On November 9, 1990, Whitmore filed an ex parte application for an order shortening time and motion for continuance of trial date, asserting that, in light of the voluminous materials involved in this case, counsel would be unable to prepare Whitmore's defense within the time constraints set by the court. In an attached declaration, Woods stated she had two other jury trials during the month of October. Woods indicated that the Government did not oppose the motion for continuance, and that counsel for Whitmore's co-defendants either joined in the motion or were unavailable when contacted. The district court denied the continuance on November 13, 1990, and ordered Whitmore's motions to be filed and served the next day. Whitmore moved for reconsideration on December 3, 1990, and again on the first day of trial. Both requests were denied. On December 3, however, the district court permitted Whitmore to file (late) approximately 15 pre-trial motions. These motions were heard on December 10, 1990. Also on the first day of trial, Whitmore's counsel asked the court for leave to file a motion to suppress, declaring that she had just completed her investigation. The court denied this request as well.
 
 
 30
 Whitmore argues that the district court abused its discretion by refusing either to grant his November 9 request for a continuance of the trial date, or to permit him to file an untimely motion to suppress evidence. Whitmore contends that trial counsel was diligent in preparing for trial and determining which pretrial motions to make, but the complexity of the case and "voluminous discovery" made adequate preparation impossible within the available time. Whitmore claims that he suffered prejudice as a result of the district court's failure to continue the trial because counsel was unable fully to investigate the possibility of a negotiated disposition, and because he was unable to bring a timely motion to suppress the evidence seized during the April 20, 1987 traffic stop, which was instrumental in producing his CCE conviction.
 
 
 31
 We review a district court's denial of a motion for continuance for an abuse of discretion. United States v. Tham, 960 F.2d 1391, 1396 (9th Cir.1991). There is no abuse of discretion unless "the denial was arbitrary and unreasonable in light of four relevant factors: (1) the extent of the defendant's diligence in readying the defense; (2) the likelihood that the continuance would have satisfied the defendant's need; (3) the inconvenience to the court, opposing party, and witnesses; and (4) the extent to which the defendant may have been harmed. To demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." Id.
 
 
 32
 We cannot say that Whitmore's counsel was afforded inadequate time to prepare for trial. When Whitmore's motion to continue was filed, on November 9, 1990, the court had already continued the trial date twice, defense counsel had been assigned to the case for more than six weeks, and the trial was another six weeks away. Further, although defense counsel stated that her inability to review the discovery was due, in part, to government delay, discovery had been provided at the beginning of October. The court did afford Whitmore some leeway, permitting him to file pretrial motions on December 3, 1990, nearly one month after the deadline established by the court.[7] Finally, even if there were an abuse of discretion, Whitmore has not shown that his proposed motion to suppress would have had any likelihood of success, or that he otherwise suffered "actual prejudice" as a result of the district court's actions.[8]
 
 
 33
 D. Double Jeopardy.
 
 
 34
 Whitmore next argues that the Double Jeopardy Clause of the Fifth Amendment requires that his conspiracy conviction be vacated as a lesser-included offense of his conviction for engaging in a CCE. The government agrees that if Whitmore's CCE conviction is affirmed, his conspiracy conviction should be vacated. Hernandez-Escarsega, 886 F.2d at 1582; see also United States v. Medina, 940 F.2d 1247, 1253 (9th Cir.1991). We will therefore order that the judgment on count 1 be vacated if Whitmore's convictions on both counts 1 and 44 withstand appellate and collateral challenge.
 
 
 35
 III. Emmitt Gene Miller, Sr.
 
 
 36
 Miller appeals his conviction, following a jury trial, on one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846 (count 1), and three counts of distribution of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) (counts 23, 26, and 27).
 
 
 37
 A. Motion to Suppress Wiretap Evidence.
 
 
 38
 Miller argues that the district court improperly denied the defendants' joint motion to suppress evidence obtained from wiretaps on Whitmore's home telephone and cellular telephone because the government's applications failed to allege facts sufficient to establish either the probable cause or necessity required by 18 U.S.C. Sec. 2518(3).
 
 
 39
 Miller first argues that the information contained in the government's June 22, 1990 application was stale, and thus, that the government failed to provide probable cause to believe that Whitmore was involved in narcotics trafficking after the beginning of 1990. Miller notes that the only evidence of Whitmore's current illegal activity was the uncorroborated hearsay testimony of Myrick, and another unidentified informant.
 
 
 40
 Miller's argument fails. "Applying practical common sense and examining the totality of the circumstances[,] ... there was a substantial basis for concluding that probable cause for the wiretaps existed." Tham, 960 F.2d at 1395. In his affidavit, Special Agent Marzullo recounted his interviews with informants Donnell Kelly and Lorenzo Myrick, both of whom observed firsthand or heard evidence that Whitmore's operation was ongoing in the spring of 1990. Further, Special Agent Marzullo detailed the evidence obtained from court authorized pen registers which monitored the numbers dialed from the telephone which was the subject of the wiretap application initiated in January 1990. This evidence showed frequent calls to pager and telephone numbers of Whitmore's cocaine trafficking associates through early June 1990. Additionally, during the time period at issue, agents observed Whitmore driving expensive new automobiles, despite no apparent employment or source of income, and engaging in "counter-surveillance" driving. Thus, the government's June 22 application set forth sufficient information indicating that Whitmore was engaged in illegal activity at the time that authorization to intercept his telephone communications was sought.
 
 
 41
 Miller argues further that the government's June 22, 1990 affidavit failed to establish the requisite necessity to issue a wiretap order because it did not demonstrate a good faith effort to employ normal investigative techniques, nor did it establish that further use of informants or undercover agents would be futile or too dangerous.
 
 
 42
 The district court did not abuse its discretion in concluding that the government's June 22 application contained a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Sec. 2518(1)(c); United States v. Khan, 993 F.2d 1368, 1375 (9th Cir.1993). "[L]aw enforcement officials do not have to exhaust every investigative alternative before obtaining a wiretap." Id. Here, the affidavit stated that "normal investigative techniques have been attempted" and "will not allow the government to achieve the objectives of this investigation." The affidavit detailed unsuccessful past efforts (and predicted the futility of future attempts) to use confidential informants, undercover agents, search warrants, trash searches, pen registers, surveillance, suspect interviews, and grand jury subpoenas. This affidavit "read in its entirety ... show[s] with specificity why in this particular investigation ordinary means of investigation will fail," and therefore is sufficient to meet the necessity requirement. United States v. Commito, 918 F.2d 95, 97 (9th Cir.1990), cert. denied, 112 S.Ct. 224 (1991) (alterations and emphasis omitted).
 
 
 43
 Finally, Miller argues that the government's two subsequent applications, dated July 17, 1990 and July 23, 1990, also failed to meet the statutory requirements. As these two applications incorporated much of the information contained in the June 22 application, and added significant new facts obtained as a result of the first wiretap, Miller's argument is without merit.[9]
 
 
 44
 B. Sufficiency of the Evidence.
 
 
 45
 Miller argues that his conspiracy conviction must be reversed because the evidence produced at trial failed to demonstrate the existence of the single, four-year conspiracy alleged in count 1 of the indictment.
 
 
 46
 As was the case with Whitmore, even if a variance had occurred, Miller cannot show prejudice affecting his substantial rights. There was overwhelming evidence that Miller played a significant role in a conspiracy to distribute large quantities of cocaine--whether the single conspiracy charged in the indictment or one of a shorter duration. Miller does not identify "spillover evidence," nor does he explain how such evidence might reasonably have caused him prejudice.
 
 
 47
 C. Ineffective Assistance of Counsel.
 
 
 48
 Finally, Miller argues that he was denied effective assistance of counsel at sentencing. Miller maintains that his counsel stipulated that Miller was subject to a 10 year mandatory minimum sentence, which kicks in at five kilograms, when in fact the quantity of cocaine involved in counts 23, 26, and 27 (Miller's three counts of conviction) totaled only four kilograms. While noting that Harrinson testified that he delivered an additional kilogram of cocaine to Miller (which was not the subject of a charged count), Miller claims that his counsel should have forced the government to prove by a preponderance of the evidence that his acceptance of this additional kilogram was properly included as relevant conduct in the calculation of his base offense level.
 
 
 49
 We agree. The PSR incorrectly states that "the total of cocaine described in Counts 23, 26 and 27 is five kilograms." As Miller notes, the probation officer's addition is incorrect--the total is four. Given the severity of the mandatory minimum, we cannot say that counsel's stipulation was constitutionally acceptable, or that it made no difference. We therefore vacate Miller's sentence and remand for resentencing, without expressing any opinion on the quantity of drugs on which Miller's base offense level should be calculated.
 
 
 50
 The government does not contend that the district court made specific findings as to the quantity of cocaine involved in Count One. Because the district court sentenced Miller to 121 months on Count One, and because the court's drug-quantity findings with respect to that count were based solely on the PSR's statements concerning the substantive counts (23, 26 and 27), we also vacate the sentence on Count One. On remand, the government is not precluded from introducing evidence relevant to the quantity of cocaine involved in any of the four counts on which Miller was convicted.
 
 
 51
 IV. Trayveon Livingston.
 
 
 52
 Livingston appeals his conviction, following a jury trial, on one count of possession with intent to distribute more than 500 grams of cocaine (count 24), and use of a communication facility and possession with intent to distribute cocaine (count 22), in violation of 21 U.S.C. Secs. 841(a)(1) & 843(b).
 
 
 53
 A. Fed.R.Evid. 801(d)(2)(E).
 
 
 54
 Livingston argues that exhibits 7-12 were improperly admitted, over objection, as statements within the coconspirator exclusion from the hearsay rule. Fed.R.Evid. 801(d)(2)(E). Additionally, Livingston maintains that introduction of the taped conversations violated his rights under the Confrontation Clause.
 
 
 55
 "An out-of-court statement by a coconspirator is admissible if (1) there is independent evidence of the existence of a conspiracy, (2) the statement was made in furtherance of the conspiracy, and (3) the statement was made during the course of the conspiracy." United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir.), cert. denied, 114 S.Ct. 573 (1993). "To be in furtherance of the conspiracy and admissible under 801(d)(2)(E), the statement must further the common objectives of the conspiracy." Id. "The declarant's intent and not the actual effect is what is important." Id. "While mere conversations or narrative declarations are not admissible under this rule, statements made to induce enlistment, further participation, prompt further action, allay fears or keep coconspirators abreast of an ongoing conspiracy's activities are admissible." Id. This court reviews de novo the legal question of whether the government established a prima facie showing of conspiracy, and applies a clearly erroneous standard in reviewing whether a challenged statement was made in the course and furtherance of a conspiracy. Id.
 
 
 56
 Relying on United States v. Fielding, 645 F.2d 719, 726 (9th Cir.1981), Livingston claims that at the time the statements contained in Exhibits 7-12 were made, the objective of the conspiracy had been achieved and his involvement with the conspiracy had terminated.
 
 
 57
 There is evidence that Livingston entered into an agreement with Coleman, Whitmore, and Miller to purchase a substantial quantity of cocaine at an undetermined price. Pursuant to this agreement, on July 18, 1990, Livingston and Coleman had a series of conversations involving the details of the transaction. Surveillance officers saw Whitmore, Coleman, and Miller leave Whitmore's residence, and approximately one hour later, agents intercepted a telephone conversation between Whitmore and Miller, during which Miller recounted how he had left the cocaine with Livingston (Exhibit 7). Thus, as Exhibit 7 details the coconspirators' efforts to keep each other informed as to the object of the conspiracy--i.e., that the transaction had occurred as planned--Exhibit 7 was properly admitted as non-hearsay.
 
 
 58
 Exhibits 8-12 recount Coleman's attempt to inform Livingston that his payment was "short" and that Livingston should comply with his end of the bargain, and efforts by Whitmore, Coleman, Miller, and others to ascertain Livingston's whereabouts in order to collect (by force) the deficiency. Even assuming that Livingston's interests had become adverse to those of his former coconspirators at this point and that the exhibits do not reflect statements in furtherance of their common objective, see id. at 727 ("the interests of [the speaker] and appellant were in such direct conflict ... that the policies of Rule 801(d)(2)(E) would not be served by admitting [the speaker's] statement"), receiving Exhibits 8-12 was nevertheless harmless because they add only incrementally to the details of the targeted criminal offense.
 
 
 59
 B. Sufficiency of the Evidence.
 
 
 60
 Livingston argues that there was insufficient evidence that he possessed with intent to distribute more than 500 grams of cocaine as charged in count 24. Livingston contends that at no point during any of the recorded conversations with Coleman did the two discuss amounts of cocaine or payment. Thus, Livingston asserts that a rational trier of fact could not conclude that the statutory minimum (500 grams) was distributed to him by Coleman and the members of the Whitmore organization.
 
 
 61
 Livingston's argument fails. During Livingston's conversations with Coleman prior to the transaction, Livingston told Coleman that he must "get a whole." Special Agent Marzullo testified that, in his opinion, Livingston was referring to one kilogram of cocaine. Further, there is circumstantial evidence that Coleman had at least one kilogram at his disposal, as earlier Miller had arrived at Whitmore's residence with a kilogram from Harrinson. The evidence was sufficient to convict Livingston for the offense charged.
 
 
 62
 C. Wiretap Evidence.
 
 
 63
 For the reasons stated in connection with Miller's appeal on the wiretap evidence, we reject Livingston's arguments that the wiretaps were improperly authorized.
 
 
 64
 AFFIRMED in part, REVERSED in part, and REMANDED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the search warrant was supported by probable cause, it is unnecessary to reach the question of whether the "good faith" exception applies. See United States v. Leon, 468 U.S. 897 (1984)
 
 
 [2]
 In addition to the conspiracy and CCE counts, Whitmore was found guilty of the offenses charged in count 2 (possession with intent to distribute), count 3 (use of a firearm during a narcotics trafficking offense), counts 8, 15, 23, 26, 27, 31 (distribution), count 7 (attempted possession with intent to distribute), and counts 25 and 30 (use of a communication facility)
 
 
 [3]
 Whitmore contends that the evidence demonstrated five distinct groups involved in criminal activity. The first group, active in 1986, included Deamento, Ketchens, Whitmore, McCaleb, and Willis. The second group, uncovered by the 1987 traffic stop, included Marlon Askins, Martin Askins, and Whitmore. The third group, transacting business in 1988, included Shaw, the "men from Detroit," and Whitmore. The fourth group included Myrick, Hamilton, Stevenson, O'Connor, and Whitmore. (Whitmore was acquitted with respect to these transactions with Myrick, and O'Connor was convicted. Whitmore asserts that because the jury was instructed that each conspirator was responsible for the acts of other members of the conspiracy, this demonstrates that the jury found that Whitmore was not involved as a conspirator in these transactions.) Finally, the fifth group, centering on transactions occurring in the summer of 1990, included Aldana, Harrinson, Coleman, Morgan, Daniels, and Whitmore
 
 
 [4]
 Whitmore also contends that Daniels, Harrinson, Aldana, Myrick, Deamento, and Ketchens were not "supervisees." However, neither in the indictment nor at trial did the Government specifically name these individuals as being under Whitmore's supervision, management, or organization. While the Government did mention Myrick, Harrinson and Daniels in its closing argument in the context of its discussion of the supervisee element, a fair reading of the transcript indicates that these three individuals were used to help the jury locate the respective roles of the true supervisees, and were not placed by the Government in the supervisee category in their own individual capacities
 Oscar Coleman was named in the indictment as a potential supervisee, but was not identified by name by the Government during its closing argument. In any event, Whitmore does not contend that Coleman did not qualify.
 
 
 [5]
 Whitmore argues that since the jury acquitted him with respect to the Myrick transactions, but convicted O'Connor, the jury must have found that O'Connor and Stevenson acted on their own, and therefore, it would be improper to use this evidence to demonstrate that O'Connor and Stevenson were supervised by Whitmore. Whitmore cites no authority in support, and such an inference is not necessary. See United States v. Hart, 963 F.2d 1278, 1280-82 (9th Cir.1992) (jury verdicts insulated from review on ground of inconsistency)
 
 
 [6]
 Arguing that his phone communications clearly were acts of preparation, Whitmore asserts that "[i]n each [attempt] case, the intervention of the police interrupted the consummation of the completion of the transaction." While this is a fact that many attempt cases seem to have in common, none of the cases cited by Whitmore indicates that police interruption is a necessary element of an attempt conviction
 
 
 [7]
 The cases cited by Whitmore in support of his claim that an abuse of discretion occurred, United States v. Chavez, 902 F.2d 259, 264 (4th Cir.1990) and United States v. Jones, 619 F.2d 494, 497 (5th Cir.1980), are distinguishable. In Jones, the district court cited untimeliness as one of two grounds for denying the defendant's motion to suppress. 619 F.2d at 497. The Fifth Circuit concluded that the district court abused its discretion in denying the motion on that basis because the court gave the defendant only 10 days from entry of his plea to file pretrial motions, and because both parties treated the motion to suppress as timely, fully argued its merits, and the district court determined its merits. Id. In Chavez, the Fourth Circuit determined that the district court abused its discretion in denying the defendant's motion to suppress as untimely because the request for a suppression hearing was made "almost two weeks prior to trial and the day after receiving the grand jury transcript, which revealed a concern that the defendant had unsuccessfully inquired into at the preliminary hearing." 902 F.2d at 264. The court proceeded to the merits of the defendant's argument on the suppression motion, and concluded that the attack on the warrant failed. Id
 
 
 [8]
 Counsel on appeal suggests that a motion to suppress evidence obtained as a result of the April 20, 1987 warrantless traffic stop of Whitmore, Marlon Askins, and Martin Askins would have been successful. Inglewood Police officers stopped a red Ford Bronco for speeding; when the driver was unable to produce identification, the officers ordered him out of the car. As the driver, Martin Askins, complied, the officers noticed an ammunition box in the storage area of the passenger's door. The officers then ordered the two passengers (Whitmore and Marion Askins) out of the car. Whitmore placed a black satchel on the front seat as he was getting out. When the officers looked inside they saw a loaded Smith and Wesson .357 revolver, a loaded Heckler and Koch 9mm semiautomatic pistol, a pager, papers with Whitmore's name, and a narcotics ledger. They then searched the car, finding other weapons and a bag of cocaine base. No basis appears for concluding a motion to suppress would have been meritorious
 
 
 [9]
 Because each of the government's applications met the statutory requirements, it is unnecessary to reach the issue of whether the Leon good faith exception applies